HUDSON COUNTY COURT OF COMMON PLEAS.

JOHN BOTTARI, PETITIONER-APPELLANT, v. FEDERAL SHIPBUILDING AND DRY DOCK COMPANY, RESPONDENT-APPELLEE.

Decided May 22, 1947.

For the petitioner-appellant, *Albert A. Sann* (*Aaron Gordon,* of counsel).

For the respondent-appellee, *James J. Skeffinglon.*

DREWEN, C. P. J. Petitioner was a shipfitter's helper in respondent's employ. The accident, which is alleged to have befallen him on August 1st, 1945, is described in the claim petition as follows: "While butting steel plates, petitioner felt a severe pain over the region of his heart, he became distressed with weakness and felt faint and short of breath." The resulting injuries are claimed to be "Arteriosclerotic heart, cardiac hypertrophy, auricular fibrillation, left ventricular failure."

For all that appears in the petition, as well as in petitioner's proofs, the claim here is not for an aggravation of a pre-existing condition but for an original injury. Nothing in the evidence justifies our viewing it as other than a claim for original injury. Indeed, it is the emphasis of petitioner's proof that any other theory of his claim is to be rejected, for he would maintain even in the face of the strongest contrary evidence that there has been no pre-existing condition. This

is the issue: Was there an accident; and if so, is it the cause of petitioner's present incapacity? It is not disputed that he is suffering from a heart ailment and that his disability is total.

An accidental happening is vouched for by the testimony of petitioner alone; there is no corroboration in any form. His immediate superior testifies that he recalls no such event; and petitioner himself is shown to have admitted to one of respondent's physicians that the illness experienced by him at the time and on the day in question was not coincident with an injury. In his testimony he says: "I was fitting two plates with an iron bar. So I feel a pain in my heart and I go to the doctor, which doctor give me an injection." The pain described is said to have been felt ten minutes after he started to fit the plates, and he amplifies his description by saying: "I no feel good. I got heart trouble. My ankles swell up, short breath—can't breath no more." He says he cannot work; that he cannot climb stairs; that he is "all out of breath;" that his heart beats too fast; that his ankles swell up; that he cannot stand for any length of time. In his first reference to the subject as a witness in the hearing petitioner declares that the condition he describes had never been experienced by him prior to the accident alleged and that until then he had been in continuous good health. As will be seen, his testimony in this respect does not hold.

Such testimony as there is that an accident occurred is most unsatisfactory. As already stated, it is entirely uncorroborated, though that alone could not defeat its credibility. More important are the contradictions with which petitioner is confronted and quite unable to reconcile. It cannot be doubted upon the whole record that prior to August 1st, 1945, the date on which the injurious mishap is said to have occurred, petitioner was a cardiac patient complaining of the very symptoms and ills which he would now have the court determine resulted solely from an accident. It appears that prior to the date in question petitioner had consulted his own physician, a Dr. DeVito of Brooklyn, New York City. He first insisted that this recourse to Dr. DeVito was after August 1st, 1945, though later he admits it was prior.

During a considerable period preceding August 1st, 1945, petitioner made frequent visits to respondent's first aid station which he says were occasioned by the need of eye treatment following welding flash. The last of these visits took place on July 28th or July 29th, 1945. At any rate, on the latter date he made a statement in writing which in the course of his testimony he acknowledges. He then complained of a swelling in the leg but ascribed it to a bump received during his work a year before, but which he says he did not report. It is in the same statement that he admits the prior examination by his own physician, Dr. DeVito, and the advice of the doctor that he go to the hospital for treatment of a heart condition. Petitioner states further that the doctor told him the leg swelling was caused by the disease of his heart. On the occasion of the latter visit to the first aid station respondent's physician gave petitioner the same advice as previously had by him from Dr. DeVito, more particularly with reference to needed surcease of effort.

Respondent admits that on August 1st, 1945, petitioner did present himself to its doctor but denies that he did so by reason of any occurrence like that which he now claims to have been the accidental happening of that day. Nothing that he told respondent's doctor on August 1st includes any reference to an accident. What he described to the doctor was an exacerbation of illness. Petitioner's words were: "I was working and all of a sudden everything turned dark before my eyes and remained so for ten minutes. * * * I didn't fall down during that time but held onto the tool box. The eyes feel better now. The cause, I don't know. I didn't sustain any injury at that time." This explicit denial of accident and injury made on the very day and subsequent to the time of the alleged happening is nowhere explained or reconciled and it precludes rational belief that an accident occurred.

Petitioner's proofs upon the hearing in the Bureau include the testimony of two physicians, Dr. Koppel and Dr. Elwood. Each gave it as his opinion that the happening described as the accident of August 1st, 1945, is the efficient cause of petitioner's cardiac illness. Needless to say, however, the

hypothesis addressed to these physicians excludes any assumption of the pre-existing cardiac illness which respondent's proof and petitioner's own admissions would seem to place beyond controversy. In the circumstances this just about renders valueless the hypothetical testimony of the doctors named. .

Dr. Coyle had examined petitioner for respondent on July 27th, 1945, four days prior to the alleged accident. His findings and diagnosis are generally the same as those of all other physicians in the case, which for all present purposes may be regarded as in accord. And petitioner evidenced to Dr. Coyle at the time symptoms that are included in those which he says resulted from the accident. It was Dr. Coyle who examined the petitioner on August 1st, 1945, and to whom petitioner made the statement already mentioned. Dr. Coyle testifies that he believes the condition to be one of chronic heart disease plus arteriosclerosis of many months duration, about two or three years or more, a period in which the patient would have from time to time acute exacerbations or symptoms, and that the patient exhibited such acute exacerbations when the doctor saw him on August 1st, 1945. He adds that the weakness of petitioner's heart muscle had been progressing for probably seven years. .

None of respondent's medical proof is contradicted in any respect, neither that of Dr. Coyle nor of the other physicians called by it.

Petitioner's counsel would make much of the fact that at the time of Dr. Coyle's examination petitioner stated to the doctor that his condition was caused by strain. Certainly, in view of the uncontradicted testimony that stands so overwhelmingly against petitioner's accuracy and probity as a witness, we cannot permit him to diagnose his own case even were it otherwise allowable. At any rate, Dr. Coyle disagreed with this statement of petitioner and told him so.

Dr. Salmon is another physician who examined petitioner, the latter having been referred to him by respondent as a medical patient and not because of any accident or injury. The examination was made July 28th, 1945, when the doctor found valvular heart disease with auricular fibrillation in a

progressed state. A prior examination by Dr. Salmon had been made as early as July 15th, 1943, at which time there were vericosities of both legs, with pain; discoloration and scars; swollen ankles and healed ulcers. As already indicated, none of this medical proof is contradicted in any way.

Lastly, Dr. Kaufman made an examination on July 5th, 1946, and his pathological findings are in general like the others. Needless to say, the credibility of petitioner is not helped by his denial to Dr. Kaufman of any illness, including heart disease, prior to the date of the claimed accident. Specifically Dr. Kaufman gives it as his opinion that there is no causal relation between petitioner's cardiac disability and any accidental happening, and does so by reason of the nature and phase of the illness and the character of the symptoms.

Counsel for petitioner tries to bring the case within the principle of *Rivers* v. *East Coast Shipyards, Inc.*, 24 *N. J. Mis. R.* 223; 48 *Atl. Rep.* (*2d*) 311. The two situations are not at all similar. In the Rivers case exertion, though within the normal limits of the work, caused the workman's death. In the present case nothing is credibly shown to have occurred in the course of the employment as inducing the condition or as aggravating a prior state thereof.

We are in complete accord with the Deputy Commissioner that the plaintiff has manifestly failed to carry his burden of proof. The petition is dismissed.